# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TEAIRA SHORTER, | Case No. 2:16-cv-00971-KJD-CWH |
| Plaintiff, | **ORDER** |
| v. | |
| THE CITY OF LAS VEGAS, et al., | |
| Defendants. | |

Before the Court is Plaintiff Teaira Shorter's motion to amend or correct the Court's order on Defendants' motion for summary judgment (#81). Defendant Correct Care Solutions responded (#83), and Shorter replied (#84).

## I. Background

This case stems from the medical treatment Shorter received while detained at the Las Vegas Detention Center in May 2014. During her detention, Shorter's appendix ruptured. Although she complained of symptoms consistent with appendicitis—persistent abdominal pain, nausea, and vomiting—prison officials did not immediately transfer her to the hospital and opted instead to treat her in-house. Unfortunately, by the time officials decided to transfer Shorter to the hospital, her condition had deteriorated to the point that doctors were unable to safely operate to remove her appendix. This resulted in a lengthy hospital stay before and after her appendectomy procedure. In April 2016, Shorter brought this suit against the Cities of Las Vegas, North Las Vegas, and various other defendants, including: Correct Care Solutions who is the contracted medical services provider to the Las Vegas Detention Center, two Correct Care nurses, Ifeanyi Madu and Joe Halpin, and Michelle Freeman in her official capacity as Director of the Las Vegas Detention Center. Shorter alleged (1) that each defendant was deliberately indifferent to her serious medical needs, which violated her Eighth and Fourteenth Amendment

rights; (2) that each defendant negligently failed to provide medical care to her while in custody; and (3) that NRS 211.140(4) imposes a statutory duty of care upon each defendant to provide adequate health care, which the defendants breached. On October 25, 2018, Correct Care and nurses Madu and Halpin, moved for summary judgment on each of Shorter's claims. The remaining defendants joined that motion on Shorter's negligence per se claim but did not challenge her § 1983 or negligence claims.

On September 28, 2018, the Court granted summary judgment in part and ordered supplemental briefing on the deliberate indifference standard for individual defendants Madu and Halpin that is set out in Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124–25 (9th Cir. 2018). As to Shorter's § 1983 claim against Correct Care, the Court denied summary judgment finding a genuine issue of material fact whether Correct Care failed to implement policies or procedures to prevent deliberate indifference to her medical needs or in the alternative failed to follow those policies. As to Shorter's negligence claim against Correct Care and nurses Madu and Halpin, the Court found that Shorter's claim was one for medical malpractice and thereby required an expert affidavit at the time of filing. Because Shorter's complaint lacked that affidavit, the Court dismissed her claim without prejudice. Finally, the Court granted summary judgment on Shorter's negligence per se claim as to each defendant finding that NRS 211.140(4) does not impose a duty on any of the named defendants. Shorter now moves to alter or amend the Court's order on her negligence and negligence per se claims. Correct Care and nurses Madu and Halpin have responded in opposition.

**II.      Legal Standard**

Rule 59 allows a party to seek alteration or amendment of a judgment within 28 days of its entry. These motions are generally disfavored and should not be granted absent "highly unusual circumstances." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000); LR 59-1(b). While there is no particular test for reconsideration, the following factors guide the Court's analysis: (1) the Court has received evidence not previously available; (2) the Court determines it committed clear error making its prior decision "manifestly unjust;" or (3) the Court discovers an intervening change in controlling law. School Dist. No. 1J v. ACandS,

Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). In considering such a motion, the Court is cognizant of the interests of finality of judgment and conservation of judicial resources. Carrol v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003). This is a remedy that should be used sparingly and is not a vehicle to raise arguments that a party could reasonably have raised earlier. Kona Enters., Inc., 229 F.3d at 890.

### III. Analysis

Shorter asks the Court to amend two of its holdings and find the following: (1) that NRS 41A.071 did not require Shorter to file an expert affidavit with her initial complaint because Correct Care Solutions is not a "provider of healthcare" under the statute and (2) that NRS 211.140(4), which requires the cities of Las Vegas and North Las Vegas to provide medical care to detainees, imposed a duty on at least one defendant. The Court evaluates Shorter's claims in order.

#### A. NRS 41A.071 Required Shorter to File an Expert Affidavit with her First Complaint Because It Alleges Professional Negligence

The gist of Shorter's new argument is that her claims cannot be subject to 41A.071's affidavit requirement because the statute only applies to "provider[s] of health care" and Correct Care is not a "provider of health care" under NRS 41A.015. Because Correct Care is not a health care provider under NRS 41A.017, she continues, her claims were not professional negligence claims and dismissal was improper.

In Nevada, a complaint for professional negligence must be filed with an expert affidavit that supports the allegations of the complaint. NRS 41A.071. A party's failure to submit the affidavit requires dismissal without prejudice. The statute is clear; the "district court *shall* dismiss" the complaint if it is not accompanied by the affidavit at the time it is filed. NRS 41A.071 (emphasis added). The purpose of the statute is to protect medical professionals from frivolous lawsuits and promote the practice of medicine in Nevada. See Fierle v. Perez, 219 P.3d 906, 908 (Nev. 2009). Thus, if an action is for professional negligence, it must be accompanied by an expert affidavit or it must be dismissed. The Court's original order acknowledges this. Referring to Shorter's complaint, the Court stated, "if this is a professional negligence action that was filed without an affidavit, the Court must dismiss it." ECF No. 80, at 8.

The question then is whether Shorter's complaint alleges a claim for professional negligence against Correct Care and nurses Madu and Halpin. NRS 41A.015 defines professional negligence as the failure of a "provider of health care . . . to use the reasonable care, skill or knowledge ordinarily used under similar circumstances by similarly trained and experienced providers of health care." Whether an entity is a "provider of health care" is defined in NRS 41A.017, which lists various medical professionals. It reads:

> "Provider of health care" means a physician licensed pursuant to chapter 630 or 633 of NRS, physician assistant, dentist, licensed nurse, dispensing optician, optometrist, registered physical therapist, podiatric physician, licensed psychologist, chiropractor, doctor of Oriental medicine, medical laboratory director or technician, licensed dietitian or licensed hospital, clinic, surgery center, physicians' professional corporation or group practice that employs any such person and its employees.

NRS 41A.017.

Shorter contends that the Court misinterpreted NRS 41A.017 when it determined that Correct Care is a group practice under the statute. She points to the syntax of the statute and the characteristics of Correct Care's corporate structure to demonstrate that it is not a "group practice." The statute's last listed entities are "physicians' professional corporation or group practice that employs any [listed] person." Shorter points out that the text does not separate the terms "physicians' professional corporation" and "group practice" with a comma. She argues that the missing comma limits groups practices to a *physician's* group practice or "group practices owned by physicians." ECF No. 81, at 7. Correct Care, she claims, cannot be a physician's group practice because its corporate leadership consists of "business people, not practitioners of health care." Id. at 10. In fact, "only three (3) individuals out of sixteen (16) individuals comprising of [Correct Care's] leadership are trained and licensed as medical practitioners." Id. at 9. It follows, she claims, that because Correct Care is not a provider of health care under the statute, it "should not be able to shield itself from liability of its own negligence by characterizing itself as a physicians' group practice." Id. at 10.

However, merely classifying Correct Care as a health care provider does not shield it from liability as Shorter argues. On the contrary. The statute does not affect Correct Care's

liability one way or the other. Regardless of 41A.071's affidavit requirement, Correct Care may still be sued for professional and general negligence. The statute only requires that a party asserting a professional negligence claim against Correct Care to submit an expert affidavit supporting its claim.

Further, accepting Shorter's interpretation of the statute would lead to absurd results and would be inconsistent with the Nevada Supreme Court's interpretation of NRS 41A.017. First, if the term "health care provider" were limited to group practices operated exclusively by doctors, the statute would exclude nearly every hospital in Southern Nevada because their boards are run by "business people, not practitioners of healthcare."[1] Shorter's interpretation of NRS 41A.017 also conflicts with the Nevada Supreme Court's interpretation of whether a plaintiff's claim is one for professional negligence. At bottom, the point of NRS 41A.071 is to require preliminary support for malpractice claims against medical professionals. To determine whether a complaint is for professional negligence the Nevada Supreme Court looks at the underlying allegations in the complaint. It gives the following guidance: the Court "must determine whether [the] claims involve a medical diagnosis, judgment, or treatment or are based on [the] performance of medical services." Szymborski v. Spring Mtn. Treatment Ctr., 403 P.3d 1280, 1284 (Nev. 2017); DeBoer v. Sr. Bridges of Sparks Fam. Hosp., 282 P.3d 727, 731 (Nev. 2012). Thus, if the plaintiff's allegations boil down to deficiencies in the defendant's medical diagnosis, judgment, or treatment the claim is for professional negligence. Id.

---

[1] For instance, multiple hospitals in southern Nevada would not qualify as providers of health care under Shorter's interpretation of the statute because their executives are not practicing physicians. For instance, Valley Health System would not qualify as a provider of health care under Shorter's interpretation of NRS 41A.017. Even though Valley Health System advertises itself as a "healthcare management company" and operates multiple hospitals in the Las Vegas valley, its CEO is not a licensed practitioner. See Valley Hospital Names Claude Wise as Chief Executive Officer (Aug. 24, 2018), https://www.valleyhospital.net/about/news/valley-hospital-names-claude-wise-as-chief-executive-officer (CEO Claude Wise "earned both his Master of Business Administration and Master or Health Administration from Georgia State University"). Likewise, University Medical Center would not qualify as a provider of health care under Shorter's interpretation. See Bio on Mason Van Houweling, CEO Univ. Med. Ctr. of S. Nev., https://www.uab.edu/shp/hsa/images/2018-Symposium/Bio_-_Mason_VanHouweling.pdf (last visited Dec. 20, 2018) ("Mason earned a Master of Science in Health Services Administration from University of Central Florida . . . he also obtained a Bachelor of Science in Health Services Administration from University of Central Florida"). Finally, Dignity Health, which owns and operates the St. Rose network of hospitals, would not qualify as a provider of health care under Shorter's interpretation. See Theresa Conley Named President/CEO, https://www.dignityhealth.org/las-vegas/about-us/press/press-center/teressa-conley-named-president-ceo (last visited Dec. 20, 2018) (Ms. Conley "holds . . . a master's degree in critical care nursing, a Master of Business Administration and a doctorate in public administration").

In Szymborski, the Nevada Supreme Court faced a similar question as the one presented here. Specifically, whether a negligence claim against a hospital was in fact a medical malpractice claim thereby triggering 41A.071's affidavit requirement. Admittedly, the line between general negligence—which does not require affidavit—and medical malpractice—which does—is not always clear. Id. at 1285. The Court must look to the gravamen or "substantial point or essence" of a claim to determine whether it is a claim for professional negligence and thereby subject to the requirements of NRS 41A.071. Id. Claims that are "substantially related" to medical treatment or claims that require expert testimony to determine the appropriate standard of care qualify as medical malpractice claims. Id. at 1284–85 (citing Gunter v. Lab. Corp. of Am., 121 S.W.3d 636, 640 (Tenn. 2003); Bryant v. Oakpointe Villa Nursing Centre, 684 N.W.2d 864, 872 (Mich. 2004)).

Shorter's entire claim against Correct Care arises out of the treatment, diagnosis, and care provided by nurses Madu and Halpin. Her complaint makes this clear. There, she claims Correct Care "had a duty of reasonable care toward [Shorter] to *provide adequate and/or necessary medical care* . . . while Shorter was in [Correct Care's] custody." ECF No. 32, at 12 (emphasis added). She continued, Correct Care and nurses Madu and Halpin "breached their duty when they *failed to provide adequate and/or necessary medical care* to Shorter." Id. (emphasis added). The gravamen or "substantial point or essence" of Shorter's claim against Correct Care is that its failure to diagnose her appendicitis and adequately treat her condition fell below the acceptable standard of care. Additionally, if Shorter's negligence claim were to proceed, it is likely that she would have to utilize expert testimony to establish the appropriate standard of care for the nurses who treated her while detained. See Staccato v. Valley Hosp., 170 P.3d 503, 506 (Nev. 2007) ("generally, a plaintiff must present expert medical testimony to establish medical malpractice"). And so, Shorter's negligence claim against Correct Care and nurses Madu and Halpin is in fact a claim for medical malpractice subject to NRS 41A.071.

Other courts have reached the same conclusion. In O'Neal v. Las Vegas Metro. Police Dept., the Court evaluated whether a pretrial detainee's claims against Naphcare—a private corporation that contracts with Clark County to provide medical services to Clark County

inmates—was subject to the affidavit requirement in NRS 41A.071. No. 2:17-cv-02765-APG-GWF, 2018 WL 4088002 (D. Nev. Aug. 27, 2018). There, an inmate injured his shoulder climbing down from his top bunk. Id. at *2. He claimed that Naphcare negligently failed to provide him care for the injury and refused to prescribe him the necessary medication to treat the injury. Id. Like Shorter's suit against Correct Care, O'Neal sued Naphcare under theories of § 1983 liability and negligence. Like Shorter, O'Neal failed to file an expert affidavit according to NRS 41A.071. Naphcare, like Correct Care, moved to dismiss O'Neal's claims citing the 41A.071's affidavit requirement. Id. It argued that O'Neal's failure to file the affidavit required dismissal. The Court agreed. It found that the substance of O'Neal's complaint was "based in medical treatment or judgment" provided by Naphcare. Id. at *3. As a result, the Court dismissed O'Neal's complaint. Id.

Likewise, Shorter's claims arise out of the care, diagnosis, and medical judgment of nurses Madu and Halpin. She alleges that they failed to diagnose her appendicitis and that her treatment fell short of the standard of care. Shorter's complaint alleges a claim for professional negligence, which triggers the affidavit requirement of NRS 41A.071. Therefore, the Court refuses to reconsider dismissal of her claim.

### B. **NRS 211.140(4) does Not Impose a Duty on these Defendants nor does it Create a Private Right of Action**

Next, Shorter argues that NRS 211.140(4) imposes a duty of care on at least one defendant: Michele Freeman in her official capacity as Director of the City of Las Vegas Detention Center. NRS 211.140(4) compels Nevada cities and townships to provide a program for health care services to incarcerated people. It states, "The sheriff, chief of police or town marshal shall arrange for the administration of medical care required by prisoners while in his or her custody." NRS 211.140(4). It also provides that the city shall pay the cost of such services. Id.

Shorter asks that the Court amend its order to find that NRS 211.140(4) imposed a statutory duty of care on at least one defendant: Michele Freeman. Freeman is the Director of the Las Vegas Detention Center and Chief of the Las Vegas Department of Public Safety. Part of her responsibilities as Director of the Detention Center and Chief of the Public Safety Department is

to oversee city detention centers. Shorter argues that Freeman's duty to oversee detention centers imposes upon her the duty to "arrange for the administration of medical care" to inmates. She also argues that Freeman, as the Chief of the Department of Public Safety, is the public official that 211.140(4) intends to direct. As a result, Shorter claims that she may at least sue Freeman under a theory of negligence per se under NRS 211.140(4).

If the legislature intended to make the Chief of the Department of Public Safety liable under 211.140(4), it would have said so. Absent from the statute, however, is any indication that it imposes a duty on anyone but the chief of police, sheriff, or town marshal. And the fact that Freeman has "chief" in her title is not enough to extend to her that duty. Additionally, the statute does not impose a minimum standard of care or govern the quality of its health care program. In fact, there is no indication that the statute requires anything more than providing the program. The city satisfied this duty when it contracted with Correct Care to arrange for the administration of medical care for inmates. Therefore, the Court denies Shorter's motion to alter or amend its judgment on her claim for negligence per se.

**IV.    Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend/Correct Order on Defendant's Motion for Summary Judgment (#81) is hereby **DENIED**.

Dated this 17th day of January, 2019.

_____
Kent J. Dawson
United States District Judge